IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| NICOLE A. MARCH, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | 7:13-cv-01478-LSC |
| | ) | |
| BEST BUY STORES, LP, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**Memorandum of Opinion**

Plaintiff Nicole March ("March") brings this action under the Court's diversity jurisdiction, and alleges various state law claims against Defendants Best Buy Stores, LP ("Best Buy") and Geek Squad Technical Support ("Geek Squad").[1] March asserts that, while servicing her personal electronic devices, employees of Defendant Best Buy viewed and retained fifty-eight nude photographs of Plaintiff without her permission. The Court has before it both Plaintiff's motion for partial

---

[1] While the formal case heading lists both Best Buy and Geek Squad as defendants in this action, Best Buy characterizes the Geek Squad as simply a name under which Best Buy does business. Consequently, this Memorandum of Opinion proceeds as if Best Buy is the only defendant in this action.

summary judgment (Doc. 70) and Defendant's motion for summary judgment (Doc. 84). Also before the Court is Plaintiff's motion to amend her complaint (Doc. 75), and the parties' motions to strike certain evidence (Docs. 98, 99).

For the reasons set forth, Plaintiff's motion to amend is due to be granted, while her motion for partial summary judgment is due to be denied. Defendant's motion for summary judgment is due to be granted as to Plaintiff's negligence/wantonness claim, and denied as to all remaining claims. Both parties' motions to strike are denied.

## I.   BACKGROUND[2]

Plaintiff March was an employee at the Best Buy store in Tuscaloosa, Alabama from April 2011 until late 2013. Best Buy is a large consumer electronics retailer, while Geek Squad is a wholly-owned subsidiary that provides in-store customer assistance concerning customers' personal electronic devices. Members of the Geek Squad worked in an area of the Best Buy store referred to as the "Geek Squad precinct." While March worked at Best Buy's Tuscaloosa location, she was not a member of the Geek Squad.

---

[2] Because there are cross-motions for summary judgment, the Court notes the differences in each side's view of the facts where they exist. Each summary judgment motion must be evaluated independently, with the facts read in the light most favorable to the non-moving party. *Griffis v. Delta Family-Care Disability*, 723 F. 2d 822, 823-24 (11th Cir. 1984).

On multiple occasions, Plaintiff March has posed nude for photographs or has personally taken photographs of herself while nude. March stored these photographs on her personal electronic devices, including several external hard drives.[3] On at least two occasions, March had external hard drives containing nude photographs serviced by the Geek Squad at Best Buy's Tuscaloosa location. In August 2011, March brought two external hard drives ("Hard Drive 1" and "Hard Drive 2") to Geek Squad for data recovery services. Hard Drive 1 was examined and later returned to March as functional. Hard Drive 2 was sent off-site in an effort to recover the data stored on it. However, the hard drive's contents could not be accessed and it was returned to March in its non-functional capacity. Hard Drive 2's contents remain inaccessible. March paid for these services and received a customer ticket documenting the transaction.

In March 2013, March brought a third external hard drive ("Hard Drive 3") into the Tuscaloosa Best Buy for service by Geek Squad. While in the store, March purchased a fourth external hard drive ("Hard Drive 4"), and requested that Geek Squad transfer the contents of Hard Drive 3 to Hard Drive 4. March gave her devices to a Geek Squad member named John Young ("Young") to complete the data

---

[3] External hard drives are portable devices capable of storing large amounts of data, typically hundreds of gigabytes.

transfer. March did not pay for this transfer service, and received no customer ticket documenting the services. However, March contends that her manager at the Best Buy location, James Meggs ("Meggs"), told her that Best Buy would complete the data transfer for March should she buy the new external hard drive at Best Buy's Tuscaloosa location. Best Buy asserts that Meggs never made such a promise, and that, at most, the free transfer service was discussed *after* March purchased Hard Drive 4.

On May 11, 2013, Plaintiff March received a Facebook message from Nathan Smith ("Smith"). Smith was March's former coworker, and was a Geek Squad employee at the Tuscaloosa Best Buy until March 15, 2013. In the Facebook message, Smith told March that he was in possession of "about 50 or so" nude photographs of her. Smith initially told March that he had obtained the photographs from accessing a link to a torrent website, and claimed the link was forwarded to him by a former Geek Squad employee who had last worked at the Tuscaloosa Best Buy in early 2012. March traveled to Smith's house that night to view the photographs. After viewing the photographs on Smith's computer, Smith downloaded the fifty-eight photographs at issue from his computer to a USB flash drive (the "March Flash Drive"). Smith then gave March the flash drive.

Later that night, Plaintiff March received a Facebook message from Charles Scarbrough ("Scarbrough"), who was also a Geek Squad employee at the Tuscaloosa Best Buy. Scarbrough informed March that he had heard of March's predicament, and that he would personally find out whether anyone at the Geek Squad precinct had removed photographs from one of March's external hard drives without her permission. On May 17, 2013, March received another Facebook message from Scarbrough, stating that he "had found the culprit" and had appropriately disciplined that person. However, Scarbrough asked March to "do him a favor" by not asking who the Geek Squad employee was that took the photographs. March never responded to this Facebook message. Scarbrough now asserts that he in fact never found the person responsible for removing March's photographs, and that he told March otherwise in an effort to ease her mind. On May 20, 2013, March filed a police report concerning the matter.

In the days immediately following May 11, 2013, March told several supervisors and coworkers at Best Buy about the apparent theft of her photographs. According to Best Buy, an internal investigation was launched at that time, but to no conclusive result. Following the filing of the above-styled action on August 8, 2013, Best Buy reopened the investigation. Stephanie Miller ("Miller"), a human resources

representative at Best Buy, led the investigation. While Miller was unable to determine if a Geek Squad employee actually removed photographs from one of March's personal devices, she did uncover that "customer data"—apparently March's nude photographs—were transferred to a personal flash drive[4] using a Geek Squad computer. Scarbrough was logged into the computer at the time of the transfer. As a result, Scarbrough was terminated on July 13, 2014.

While it is undisputed that March's photographs were transferred to the March Flash Drive using a computer in the Geek Squad precinct, the parties dispute the details surrounding this transfer. Relying on Smith's Facebook message, March initially alleged that the theft occurred in August 2011. However, Smith has since changed his story about how he came into possession of the photographs. Smith now claims that he received the pictures from Scarbrough. Specifically, Smith now states that, in early March of 2013, Scarbrough showed Smith the photos, which were contained in a hidden file on a computer in the Geek Squad precinct. According to Smith, Scarbrough "alluded" that it was Matt Cox ("Cox"), another Geek Squad employee at the Tuscaloosa Best Buy, who removed the photographs from one of March's electronic devices. *See* Doc. 85-11, at 73–75. Scarbrough then copied the

---

[4] Defendant's forensic expert later determined this to be the March Flash Drive (i.e., the flash drive given to March by Smith on May 11, 2013).

pictures to the March Flash Drive for Smith to take with him. This is the same flash drive that Smith later gave to March when she visited his home to view the photographs on May 11, 2013. Both Scarbrough and Cox deny any involvement in downloading or viewing the photographs at issue. Because Smith has recanted his earlier story as to how he came into possession of March's photographs, March now contends that the theft occurred when she brought Hard Drive 3 in for servicing in March 2013.

Best Buy presents evidence in the form of electronically stored information ("ESI") that seemingly contradicts Smith's new story. While Best Buy concedes that a Geek Squad computer was used to transfer March's nude photographs to the March Flash Drive on March 8, 2013, Best Buy argues that the ESI evidence shows that Hard Drive 3 was not the source of these photographs. Rather, Best Buy contends that an unidentified USB flash drive (the "Mystery Flash Drive") containing all 58 photographs at issue was inserted into a Geek Squad computer on March 8, 2013. The photographs were then copied directly from the Mystery Flash Drive to the March Flash Drive. In other words, the photographs were never saved to a Geek Squad computer, and instead passed directly from the Mystery Flash Drive to the March Flash Drive, with the Geek Squad computer merely serving as the conduit for the

transfer of files.[5]

Furthermore, Best Buy offers ESI evidence showing that three days earlier, on March 5, 2013, at least some of the photographs at issue were transferred from yet another unidentified flash drive to the Mystery Flash Drive, with March's own laptop acting as the medium for the transfer. Thus, Best Buy essentially presents a version of the facts in which March's photographs moved from some unknown storage device to the Mystery Flash Drive via March's laptop, then from the Mystery Flash Drive to the March Flash Drive via the Geek Squad computer. While March represented during discovery that her laptop was not serviced by the Geek Squad in March 2013, Best Buy contends that Plaintiff March *personally* worked on her electronic devices while in the employees-only section of the Geek Squad precinct in March of 2013. *See* Doc. 80-14, at 18–19. Finally, Best Buy also points to ESI evidence showing that the first time March connected Hard Drive 3 to her laptop to back up the laptop's contents was March 14, 2013, which is at least six days after the photographs were allegedly removed from Hard Drive 3 without March's permission.

Also at issue is whether supervisors at Best Buy's Tuscaloosa location appropriately enforced Best Buy's policies concerning the privacy of customers' files

---

[5] However, ESI evidence does show that at least two of the fifty-eight photographs were viewed on a Geek Squad computer on March 8, 2013.

and data. According to March, Geek Squad employees routinely used personal flash drives when servicing customers' electronic devices, which was in violation of company policy. March also presents evidence that Geek Squad employees used flash drives and common desktop computers to transfer customer data from one device to another, despite the fact that Best Buy policy required that a specially designed transfer device—dubbed "the Mule"—be used when effectuating transfers of customers' files.[6] Finally, March asserts that Geek Squad management openly tolerated "cheating" during quiz-based training sessions, since employees routinely shared answers with one another in violation of the training sessions' rules. Best Buy argues that, to the extent that such conduct ever occurred, it ceased following the hiring of Wenetta Stallworth ("Stallworth") as the Tuscaloosa location's new assistant manager in early 2013.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no

---

[6] The Geek Squad precinct contained four computers: (1) a desktop computer referred to as the "Tech PC," which required an employee user name and password to access; (2) the "Mule" computer, which was specifically designed to serve as the intermediary when transferring customers' files from one device to another; (3) the "Windows PC," which the parties agree was not supposed to be used to complete Geek Squad service tasks; and (4) the "Ops Agent PC," which was the computer used to access and update information concerning the status of customers' requested services. No ESI was recoverable from the Ops Agent PC due to the fact that its operating system was updated after the start of this litigation.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Avenue CLO Fund, Ltd. v. Bank of Am., NA*, 723 F.3d 1287, 1294 (11th Cir. 2013). There is a "genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The trial judge should not weigh the evidence but must simply determine whether there are any genuine issues that should be resolved at trial. *Id.* at 249.

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citing *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the

nonmoving party's case." *Id*. Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327(1986).

The fact that there are cross-motions for summary judgment in this particular case does not change the standard. Even though both sides allege that no genuine issue of material fact exists, the Court must still evaluate each motion under the Rule 56 standard, determining whether either party has established that it is entitled to judgment as a matter of law. *See Griffis v. Delta Family-Care Disability,* 723 F.2d 822, 824 (11th Cir. 1984). The Court has considered each motion in the light most favorable to the opposing party in order to determine whether the Rule 56 standard has been met. *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d. 739, 742 (11th Cir. 1996).

## III.   DISCUSSION

March's complaint asserts claims for (1) invasion of privacy; (2) outrageous conduct; (3) breach of contract; (4) negligent training and supervision; and (5) negligence/wantonness. March seeks to hold Best Buy vicariously liable for the tortuous conduct of its employees. Also pending is March's motion for leave to amend her complaint to include allegations that would place the theft of her photographs as

occurring in March 2013 rather than in August 2011, as well as competing motions to strike certain evidence on hearsay and personal knowledge grounds. This Court first addresses March's motion for leave to amend her complaint, since the Court's decision on that motion could affect what evidence may be considered when determining whether March raises a genuine question of material fact with respect to her claims.

### A.    Plaintiff's Motion for Leave to Amend

Relying on the statements made by Smith in the Facebook message sent to March on May 11, 2013, March's current complaint alleges that the theft of her photographs by Geek Squad employees occurred in August 2011. March's proposed amended complaint seeks to add allegations accounting for the changes in Smith's story about how he came into possession of March's photographs. Specifically, Plaintiff's proposed amended complaint includes allegations concerning Smith's encounter with Geek Squad coworker Scarbrough on March 8, 2013. During this encounter, Scarbrough used a Geek Squad computer to show Smith the photographs at issue, and told Smith that another employee had recently obtained the photos, apparently from one of March's personal electronic storage devices. Thus, the functional effect of these new allegations is to place the alleged theft of March's nude

photographs as occurring in early March 2013 rather than in August 2011.[7]

Generally, leave to amend under Fed. R. Civ. P. 15(a) "shall be freely given where justice so requires." *See Foman v. Davis*, 371 U.S. 178, 182 (1962). A district court considers several factors when deciding whether to grant leave to amend, including undue delay, bad faith or dilatory motive on the part of the movant, the potential for undue prejudice to the opposing party should leave to amend be granted, and the futility of the proposed amendment. *See Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1241 (11th Cir. 2009).

While Plaintiff March's attempt to amend her complaint comes at a late stage in the litigation—the motion for leave to amend was filed before Defendant's motion for summary judgment, but after discovery had closed—allowing the proposed amendment does not cause any significant prejudice to Best Buy. March's proposed amended complaint seeks only to clarify that the alleged theft of her photographs by Geek Squad employees occurred in March 2013 rather than in August 2011. Based on the record, it is apparent that discovery has been directed toward the potential 2013 theft for some time. While Best Buy asserts that allowing the amendment would

---

[7] Furthermore, since Hard Drive 3 is the only personal electronic device that March claims to have brought into Geek Squad for service in March 2013, March's proposed amended complaint essentially alleges that the photographs were removed from that device.

necessitate a reopening of discovery so Best Buy can inspect additional hard drives, March has represented to this Court that all hard drives that she intends to rely on have already been produced. *See* Doc. 87, at 4. In the event that this representation proves not to be the case, the Court will address the matter appropriately when requested.

Defendant Best Buy also asserts that, even in the absence of undue prejudice, the Court should deny March's motion for leave to amend because it comes after the scheduling order's deadline for amending the complaint to add new causes of action. Consequently, Best Buy asserts that March is required to show "good cause" under Fed. R. Civ. P. 16(b)(4) for the scheduling order to be altered to allow amendment to the complaint. *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1418, 1418 (11th Cir. 1998).

The Court questions Best Buy's assertion that the proposed amended complaint "presents new causes of action." Rather, the proposed amended complaint simply alters the complaint's factual allegations to conform to the evidence supporting Plaintiff's existing claims. While the details concerning the time and manner of the theft have changed, the fundamental grounds for this action—i.e., that Geek Squad employees allegedly viewed and retained March's fifty-eight nude photographs at some point before May 11, 2013—remains the same in both complaints. However,

even applying Fed. R. Civ. P. 16(b)'s "good cause" standard, leave to amend should be granted. The time line set forth in March's initial complaint was influenced in large part by representations made by Smith, who is one of Defendant's former employees. Smith later recanted his initial story when questioned by police, and altered his story slightly once again during his deposition. This Court will not find that March lacked diligence in amending her complaint, especially when Plaintiff's counsel did not have an opportunity to hear Smith's revised story via deposition until a month after the scheduling order's deadline for amending pleadings had passed. Accordingly, Plaintiff's motion for leave to amend is due to be granted.[8]

## B.   Motions For Summary Judgment

### 1.   *Invasion of Privacy*

Both parties move for summary judgment concerning March's invasion of privacy claim. Alabama law recognizes four separate categories of invasion of privacy claims. As Alabama courts have explained:

---

[8] A hearing is currently set for Monday, June 8, 2015 concerning Plaintiff's motion for leave to amend. That hearing remains set despite the Court's ruling on the motion for leave to amend as part of this Memorandum of Opinion. The Court will use the hearing to determine whether additional discovery is in fact needed as a result of Plaintiff's new allegations. If additional discovery is needed, the Court will fashion a time line that allows for discovery to be completed while maintaining the current date set for trial.

> Invasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use.

*S.B. v. Saint James Sch.*, 959 So. 2d 72, 90 (Ala. 2006) (quoting *Johnson v. Fuller*, 706 So. 2d 700, 701 (Ala. 1997)).

March's invasion of privacy claim falls within the first category, as she argues that Geek Squad employees intruded upon her private affairs when they wrongfully downloaded and retained her private photographs while servicing Hard Drive 3. Alabama has adopted the definition of wrongful intrusion upon seclusion found in *The Restatement (Second) of Torts*, which states that "'[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability for invasion of privacy, if the intrusion would be highly offensive to a reasonable person.'" *See Phillips v. Smalley Maint. Servs.*, 435 So. 2d 705 (Ala. 1983) (officially adopting the Second Restatement's definition of an intrusion upon seclusion claim) (quoting *The Restatement (Second) of Torts*, § 652B (1977)); *see also Rosen v. Montgomery Surgical Ctr.*, 825 So. 2d 735, 737 (Ala. 2001) (stating that an invasion of privacy occurs when there is an "'intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental

suffering, shame, or humiliation to a person of ordinary sensibilities'") (quoting *Carter v. Innisfree Hotel, Inc.*, 661 So. 2d 1174, 1178 (Ala. 1995)).

In support of her motion, March relies almost exclusively upon what she considers to be an admission from Best Buy's corporate representative that March's photographs were inappropriately accessed by a Geek Squad employee. *See* Doc. 73, at 22. However, Best Buy has presented ESI evidence calling into question whether March's photographs were actually removed from one of her personal electronic devices while those devices were being serviced in early March 2013. Specifically, Best Buy has offered ESI evidence showing that the photographs were viewed on the Geek Squad computer six days *before* the hard drive that Geek Squad serviced (Hard Drive 3) could have possibly contained March's photographs, suggesting that the photographs were obtained by Geek Squad employees through some other means. In addition, Best Buy offers testimony that March personally worked on her laptop while in the employees-only section of the Geek Squad precinct. This evidence is sufficient to create a genuine issue of material fact concerning March's invasion of privacy claim.

Likewise, Defendant Best Buy's motion for summary judgment is due to be denied on March's invasion of privacy claim. March offers Smith's testimony, which

states that Smith and fellow Geek Squad employee Scarbrough viewed March's photographs on a Geek Squad computer. Smith further states that Scarbrough told him that the photographs were removed from March's hard drive by another Geek Squad employee, Matthew Cox, when March brought the device in for servicing.[9] In addition, Best Buy does not dispute that a Geek Squad employee transferred March's photographs to a personal flash drive using the Geek Squad computer. Rather, Best Buy disputes only *how* the photographs came to be on the Geek Squad computer in the first place, and whether the photographs were actually saved on the computer or simply viewed on it. As such, Best Buy's motion for summary judgment is due to be denied with respect to March's invasion of privacy claim.

### 2.    *Tort of Outrageous Conduct*

Defendant Best Buy's motion for summary judgment is also due to be denied concerning March's claim for outrage. The tort of outrage, also recognized as the tort of intentional infliction of emotional distress, requires "extreme and outrageous

---

[9] While Best Buy contends that such statements are inadmissable hearsay, Scarbrough and Cox were Best Buy employees at the time the statements were made, and the matter they were discussing—i.e., a Geek Squad member's failure to adhere to Best Buy's policies when transferring client data—can fairly be considered a matter "within the scope of their agency and employment" under Fed. R. Evid. 801(d)(2)(D). Furthermore, the personal knowledge requirement is often relaxed concerning employee admissions under Rule 801(d)(2)(D). *See Fed. Deposit Ins. Corp. v. First Interstate Bank of Des Moines, N.A.*, 885 F.2d 423, 435 (8th Cir. 1989) (stating that "[a]s a general matter, employee statements made against the interest of an employer are admissible . . . we have held that personal knowledge is not required of an employee admission").

conduct by a person who intentionally or recklessly causes severe emotional distress to another" *Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361 (Ala. 1980). The plaintiff "must produce evidence that the defendant's conduct [was] so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Carter v. Innisfree Hotel, Inc.*, 661 So. 2d 1174, 1180 (Ala. 1995).

In arguing that it is entitled to summary judgment on March's claim for outrage, Best Buy essentially asserts that the alleged misconduct was not "outrageous" enough to sustain her claim. However, the Restatement contemplates scenarios where a tortfeasor abuses the authority, access, or trust afforded to him by his occupation, and in doing so inflicts emotional harm on a plaintiff. *See Restatement (Second) of Torts* § 46 cmt. e (1965). As such, March's allegations—which are essentially that a Geek Squad employee viewed and retained her personal nude photographs without her permission, and then showed those photographs to at least two other coworkers—could be considered by a rational jury to constitute "outrageous" conduct.

In addition, Best Buy argues that the emotional harm inflicted upon March was not "severe" enough to sustain a claim of outrage. *See Harrelson v. R.J.*, 882 So. 2d

317, 322 (Ala. 2003) (stating that a plaintiff bringing a claim for outrage must show emotional distress so severe that "no reasonable person could be expected to endure it"). March has offered evidence, including her own testimony, suggesting that she found the alleged tortuous conduct to be deeply upsetting. While Best Buy has offered evidence to the contrary, the resulting conflict must be resolved by the trier of fact. As such, Best Buy's motion for summary judgment is denied with respect to March's claim for outrage.

### 3.     *Breach of Contract*

Both parties seek summary judgment concerning Plaintiff's breach of contract claim. The parties dispute whether a contract was ever formed when March brought Hard Drive 3 in for servicing in March 2013. The elements of a contract are (1) an offer and an acceptance; (2) consideration; and (3) mutual assent "to terms essential to the formation of the contract." *See Strength v. Ala. Dep't of Fin., Div. of Risk Mgmt.*, 622 So. 2d 1283, 1289 (Ala. 1993). At issue specifically is whether March provided consideration in return for the Geek Squad's servicing of Hard Drive 3. "[T]o constitute consideration for a promise, there must have been an act, forbearance, a detriment, or a destruction of a legal right, or a return promise, bargained for and given in exchange for a promise." *Smoyer v. Birmingham Area Chamber of Commerce*,

517 So. 2d 585, 587 (Ala. 1987).

Considering the evidence in the light most favorable to March, there is evidence sufficient to show that consideration was offered in exchange for the Geek Squad services rendered in March 2013. While March admits that she did not pay for the services, she contends that her purchase of a new hard drive from Best Buy (i.e., Hard Drive 4) was expressly conditioned on Geek Squad transferring the data from Hard Drive 3 to the newly purchased external hard drive. Specifically, March argues that Best Buy manager James Meggs agreed that Geek Squad would perform the transfer should March purchase a new hard drive from Best Buy.[10] *See* Doc. 71-1, at 142. Accordingly, summary judgment is due to be denied to Best Buy on the breach of contract claim.

Summary judgment is also due to be denied to March on the breach of contract claim. Viewing the evidence in the light most favorable to Best Buy, a jury could determine that Meggs did *not* authorize the transaction at issue, or that he lacked authority to approve such a transaction. Furthermore, Best Buy has offered evidence

---

[10] Best Buy further contends that Meggs lacked the apparent authority to authorize such a transaction. *See Johnson v. Shenandoah Life Ins. Co.*, 281 So. 2d 636, 640 (Ala. 1973) (stating that a principal may be liable for the acts of his agent where he has "clothed the agent with the appearance of authority"). Whether Meggs, as one of the store's departmental supervisors, was "held out" by Best Buy to possess the authority to authorize such transactions is a question of fact suitable for jury determination, especially considering that March has offered evidence that employee-preferential transactions were common at the Best Buy store.

casting doubt on whether March's photographs were removed from Hard Drive 3 by Geek Squad employees in early March 2013. Thus, even assuming that a contract existed, a rational jury could determine that Geek Squad employees did not commit the acts that serve as the basis for the alleged breach of the contract. Thus, summary judgment is due to be denied to March on her breach of contract claim.

### 4.    *Vicarious Liability*

Both parties contend that they are entitled to summary judgment on the issue of whether Best Buy can be held vicariously liable for its employees' tortuous conduct. For an employer to be held liable for the intentional torts of its employees, a plaintiff must offer evidence that "(1) the agent's wrongful acts were in the line and scope of his employment; or (2) that the acts were in furtherance of the business of [the employer]; or (3) that [the employer] participated in, authorized, or ratified the wrongful acts." *Potts v. BE & K Const. Co.*, 604 So. 2d 398, 400 (Ala. 1992) (quoting *Joyner v. AAA Cooper Transp.*, 477 So. 2d 364, 365 (Ala. 1985)). March does not contend that the invasion of her privacy was in direct furtherance of Best Buy's business, leaving this Court to consider only whether March has presented evidence that the tortuous act occurred within the scope of employment, or whether Best Buy ratified or approved of the tortuous conduct in question.

A genuine question of fact exists as to whether the Geek Squad employees were acting within the scope of their employment when they accessed March's nude photographs. An employee's tortuous acts fall within the scope of employment "if the acts are 'so closely connected with what the servant is employed to do and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of employment.'" *See Andazola v. Logan's Roadhouse, Inc.*, 871 F. Supp. 2d 1186, 1224 (N.D. Ala. 2012)(quoting *Ex parte Atmore Comm. Hosp.*, 719 So. 2d 1190, 1194 (Ala. 1998)). March has offered evidence that Geek Squad supervisors allowed the use of employees' personal flash drives when conducting servicing orders, which would include the transfer of customers' private data. *See* Doc. 71-12, at 63; Doc. 71-11, at 109–10. The personal flash drives lacked the privacy protections of the aforementioned "Mule" transfer device, making the viewing of customers' private data action that would require little deviation from the assigned task at hand (i.e., transferring data from one device to another). In fact, an employee could accomplish both simultaneously, viewing customer files while the customer's data transfer was in progress. Thus, a jury could determine that the retention and viewing of clients' private data was an act "closely connected with what the servant is employed to do," and thus "reasonably incidental" to the tasks assigned

by the employer. *See Prosser v. Glass*, 481 So. 2d 365, 367–68 (Ala. 1985) (asserting that "where [an employee's] deviation [from the employer's business] is marked and unusual, the Court may determine that the servant was outside the scope of employment," but also stating that "[c]ases between the two extremes involve a question of fact left to the trier of fact").

Best Buy contends that the employees' motivation to view March's nude photographs was wholly personal in origin, and thus the act of accessing and retaining March's photographs was not within the scope of employment. *See Hendly v. Springhill Mem'l Hosp.*, 575 So. 2d 547, 550 (Ala. 1990) ( stating that, under Alabama law, liability for an intentional tort is not attributable to the employer if "it emanated from wholly personal motives of the agent and was committed to gratify wholly personal objectives or desires"). The Court agrees with Defendant that, at some point between when a Geek Squad employee first opened the files containing March's private photographs and when Scarbrough and Smith viewed the photographs on a Geek Squad computer, Geek Squad employees' actions likely became motivated solely by personal desires. However, at this point, a jury question remains as to *when* this transition occurred. A rational jury could determine that Geek Squad employees' initial accessing of March's files was incidental to the servicing of March's hard drive,

especially when, due to the tolerated use of devices other than the specialized "Mule" transfer device, Geek Squad employees could easily access customers' private files while simultaneously performing the duties assigned to them by Best Buy.[11]

March's motion for summary judgment concerning the issue of vicarious liability is also due to be denied. As discussed, a rational jury could find that the Geek Squad employees' actions were motivated by wholly personal concerns, and thus not within the scope of employment. Furthermore, while March contends that Best Buy's knowledge that employees were using personal flash drives to complete customer service orders is, on its own, sufficient to impose employer liability under the "ratification" theory, such ratification cannot occur unless the employer has knowledge of the *actual* tort in question, rather than simply the conditions that could lead to its occurrence. *See Potts*, 604 So. 2d at 400 (stating that an employer must have "actual knowledge of the tortuous conduct of the offending employee," and adding that "[a]n employer's failure to stop tortuous conduct *after it learns of the conduct* will support an inference that the employer tolerated the conduct") (emphasis added); *see also E. Ala. Behavioral Med., P.C. v. Chancey*, 883 So. 2d 162, 170 (Ala. 2003) (stating

---

[11] In addition, while Best Buy contends that it had policies in place prohibiting the use of devices other than the Mule when transferring customers' sensitive files, an employer may be held liable for an employee's intentional torts even when the employee acted in a way forbidden by the employer's policies. *See Lawler Mobile Homes, Inc. v. Tarver*, 492 So. 2d 297, 305 (Ala. 1986).

that "[r]atification requires full knowledge of the facts" material to the underlying

tort). For these reasons, both parties' motions for summary judgment are due to be

denied concerning the issue of vicarious liability.

### 5.   *Negligent Training/Supervision*

Best Buy argues that it is entitled to summary judgment concerning March's

claim for negligent training and supervision. In order to survive summary judgment

on a claim for negligent or wanton supervision under Alabama law, a plaintiff must

offer substantial evidence of three elements. First, a plaintiff must show that the

employee committed a tort recognized under Alabama law. *Stevenson v. Precision*

*Standard, Inc.*, 762 So. 2d 820, 824 (Ala. 1999). The second element requires that the

employer have either actual or constructive notice of the employee's conduct.

*Armstrong Bus. Servs. v. AmSouth Bank,* 817 So. 2d 665, 682 (Ala. 2001). This element

can be shown through knowledge of the employee's incompetence or unfitness for the

position. *Mardis v. Robbins Tire & Rubber Co.*, 669 So. 2d 885, 889 (Ala. 1995); *see also*

*Gilmer v. Crestview Mem. Funeral Home, Inc.*, 35 So. 3d 585, 596 (Ala. 2009) ("To

prove a claim of negligent supervision, a plaintiff must show that the employer knew,

*or in the exercise of ordinary care should have known*, that its employee was

incompetent." (citing *Armstrong*, 817 So. 2d at 682) (emphasis added)). Finally, for

the third element, Plaintiff must show that the employer failed to adequately respond to the notice. *Armstrong,* 817 So. 2d at 682; *see also Edwards v. Hyundai Motor Mfg. Ala., LLC*, 603 F. Supp. 2d 1336, 1357 (M.D. Ala. 2009).

Regarding the first element, March has presented evidence that raises a jury question as to whether a Geek Squad employee committed invasion of privacy and the tort of outrage. *See supra* Part III.B.1–2. Regarding the second element, March has presented evidence suggesting that Geek Squad supervisors disregarded their employees' violations of company policy. These violations include the use of personal flash drives to service customer electronics, "cheating" among employees during quiz-based training sessions, and employees' use of Geek Squad computers for non-business purposes such as playing video games. As the Alabama Supreme Court has stated, "[i]t is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of the servant, to leave it to the jury to determine whether they would have come to the master's knowledge had the master exercised ordinary care." *Mardis*, 669 So. 2d at 889.

Best Buy argues that March's negligent supervision claim fails because, to the extent that any such violations occurred, the problem was corrected when Best Buy hired Wenetta Stallworth as assistant store manager in early 2013. *See Edwards*, 603

F. Supp. 2d at 1357 (stating that an employer may be held liable for negligent supervision, training, or retention only if he fails to adequately respond to notice of the employee's incompetency). However, given the evidence that March has presented, whether Stallworth's hiring adequately addressed Geek Squad employees' alleged improper conduct is a question upon which rational jurors could differ. Accordingly, summary judgment is due to be denied on March's negligent supervision/training claim.

### 6.    *Negligence/Wantonness*

Finally, Best Buy contends that March's claim against Best Buy for negligence/wantonness is actually just a re-characterization of her negligent training/supervision claim. Plaintiff's negligence claim asserts merely that Best Buy acted negligently in "causing or allowing the use and abuse of Plaintiff's private and sensitive material," and Plaintiff's expert's report clarifies that Plaintiff's theory of negligence is based on Best Buy's failure to monitor the use of the computers located in the employees-only section of the Geek Squad precinct. Thus, the claim essentially alleges that Best Buy failed to monitor its employees' use of Geek Squad computers. Courts in this district have previously characterized claims alleging that an employer "failed to monitor the activities of [its] employees" as claims for negligent

supervision. *See Issac v. RMD, Inc.*, No. 2:12-cv-2030-TMP, 2014 WL 1278096, at *11 (N.D. Ala. Mar. 27, 2014). Defendant Best Buy cites numerous cases from other districts asserting the same, *see* Doc. 85, at 25 n.8, and Plaintiff March does not dispute in her response brief Best Buy's assertion that her negligence claim is redundant. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325–26 (11th Cir. 2000) (noting that a party's "failure to brief and argue [an] issue during the proceedings before the district court is grounds for finding the issue abandoned"). Accordingly, summary judgment is due to be granted on March's negligence/wantonness claim.

### C.    Motions to Strike

Both parties have also filed motions to strike certain evidence. Defendant Best Buy's motion seeks to strike as hearsay Nathan Smith's statement that March's photographs were published on the internet and Chuck Scarbrough's statement that he "found the culprit" who took March's photographs from her hard drive. Best Buy also contends that Smith lacked personal knowledge for many of the assertions he made during his deposition, including statements concerning what customer files were inappropriately stored on the Geek Squad computer.

This Court has already explained why, at least at this stage, Smith's statements are admissible concerning his conversation with Scarbrough about how March's photographs got on the Geek Squad computer. *See supra* Part III.B.1, note 9. Best Buy's argument that Smith lacks personal knowledge as to what was on the Geek Squad computer is unconvincing, since Smith's deposition indicates that he was familiar with the Geek Squad computers at issue, and on one occasion watched Scarbrough access a hidden file containing March's photographs. Furthermore, the parties will have an opportunity to more fully develop the extent of Smith's personal knowledge at trial. The remainder of Best Buy's arguments in its motion to strike are moot, since this Court did not rely on the evidence at issue when coming to the conclusions set forth in this Memorandum of Opinion. Accordingly, Best Buy's motion to strike (Doc. 98) is due to be denied.

Similarly, Plaintiff March's motion to strike is due to be denied. March seeks to have struck a lone statement from Stallworth's affidavit. Stallworth, the assistant manager at Best Buy's Tuscaloosa location, performed Smith's exit interview at the conclusion of his employment. Plaintiff takes issue with Stallworth's statement that, during his exit interview, Smith told Stallworth that he "hated Best Buy." The Court has not relied on this statement in coming to the rulings set forth in this Memorandum

of Opinion. Thus, March's motion to strike (Doc. 99) is due to be denied as moot.

## IV. CONCLUSION

For the reasons set forth above, March's motion for leave to amend (Doc. 75) is due to be granted. March's motion for partial summary judgment (Doc. 70) is due to be denied, while Best Buy's motion for summary judgment (Doc. 84) is due to be granted as to Plaintiff's claim for negligence/wantonness, and denied as to Plaintiff's remaining claims. Finally, both parties' motions to strike (Docs. 98, 99) are due to be denied.

A separate order will be entered.

Done this 2nd day of June 2015.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
177822